# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEFFREY MARTEN,<br>       Plaintiff<br><br>    v.<br><br>LIBRARIAN LAURA BLAKE,<br>       Defendant. | C.A. 14-302 Erie<br><br>Magistrate Judge Baxter |

### MEMORANDUM OPINION[1]

United States Magistrate Judge Susan Paradise Baxter

## I. INTRODUCTION

### A. Relevant Procedural and Factual History

On December 4, 2014, Plaintiff Jeffrey Marten, a prisoner formerly incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania ("SCI-Forest")[2], filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendant Laura Blake, a librarian at SCI-Forest. Plaintiff alleges that Defendant retaliated against him for exercising his First Amendment rights by preventing him from attending law library from October 3, 2014, through December 2014, after Plaintiff filed a grievance against Defendant on September 2, 2014. As relief for his claims, Plaintiff seeks monetary damages.

On March 11, 2016, Defendant filed a motion for summary judgment [ECF No. 31],

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 4, 10].

[2] Plaintiff is currently incarcerated at the State Correctional Institution at Fayette in LaBelle, Pennsylvania.

arguing that the factual record does not support a claim for retaliation. Plaintiff filed a brief in opposition to Defendant's motion on March 21, 2016. [ECF No. 35]. At the heart of Defendant's motion is her contention that Plaintiff cannot demonstrate that his lack of library time during the months of October through December 2014 was caused by Defendant's refusal to honor request slips allegedly submitted by Plaintiff during those months.[3] In particular, Defendant declares that she never received any of the twelve request slips Plaintiff claims to have submitted during those months (ECF No. 34-1, Declaration of Laura Blake, at ¶ 5). In so doing, Defendant calls into question the authenticity of the "unanswered" request slips that have been identified by Plaintiff in support of his claim, particularly since none of the slips is marked with a date stamp indicating that the library received it; yet, many of the slips have a "verification" stamp on them signed by a corrections officer, which Plaintiff cites as evidence that he did, in fact, submit the disputed request slips (ECF No. 34-2 at pp. 5-16).

Because of the curious nature of the "verification" stamps obtained by Plaintiff on the disputed request slips, and Defendant's insistence that she never received the request slips, the Court deemed it necessary to hold an evidentiary hearing to determine whether Plaintiff might be attempting to perpetrate

---

[3] Defendant also argues that Plaintiff cannot demonstrate that he suffered an adverse action as a result of Defendant's alleged retaliatory action because he continued to file grievances and lawsuits after Defendant's alleged actions; however, the determination of whether an adverse action took place requires a finding as to whether a "a person of ordinary firmness," rather than the Plaintiff himself, would likely be deterred from exercising his First Amendment rights as a result of the Defendant's alleged retaliatory conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003). This is an objective determination that is best left to the ultimate factfinder, rather that the Court on a motion for summary judgment.

a fraud on the Court.[4] This hearing was held on December 1, 2016, and was attended in person by Defendant and her counsel, and by Plaintiff, via videoconference. At the outset of the hearing, defense counsel confirmed that she intended to dispute Plaintiff's exhaustion of administrative remedies and was granted the right to present evidence regarding the exhaustion issue.[5] (See ECF No. 40, Hearing Transcript , at p. 3). At the conclusion of the hearing, both parties were given ten days to supplement their arguments in writing with any additional evidence they wished the Court to consider. Both parties filed their supplements on December 12, 2016 [ECF Nos. 41, 42]. This matter is now ripe for consideration.

### B. Standard of Review

#### 1. Summary Judgment

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e)(2) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own

---

[4] The Court's concern in this regard was further amplified by Plaintiff's submission of a copy of an alleged grievance, bearing the same form of "verification" stamp that is present on his disputed request slips, which he claims was never filed or processed by the SCI-Forest Grievance Coordinator, thus allegedly preventing him from exhausting his administrative remedies before filing this lawsuit. (ECF No. 36 at p. 6).

[5] The Court notes that Defendant raised Plaintiff's failure to exhaust administrative remedies as an affirmative defense in her Answer to the Complaint. (ECF No. 14, Answer, at p. 4 (Twelfth Defense)). Recently, the United States Court of Appeals for the Third Circuit held that "judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury." Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013) (noting that [a]lthough the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry")(internal citations omitted).

3

pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. Fed.R.Civ.P. 56(c). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322. See also Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 2010 WL 2089639, at * 1 (3d Cir. 2010) quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). See also El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson, 477 U.S. at 248. Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Id. at 247-249.

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a

5

complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II. DISCUSSION

### A. Exhaustion of Administrative Remedies

#### 1. The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113

F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[6] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002), citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-88 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

---

6
Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

## 2. **Procedural Default Component**

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[7] The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id. Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate. The first step in the grievance process is for the inmate to file a claim with the

---

[7] There is a split of authority among the Circuits on this issue. Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir.

institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### 3. Exhaustion and Procedural Default Applied

Here, Plaintiff alleges that he filed a grievance on November 3, 2014, regarding the claims raised in this lawsuit, but "the SCI-Forest Grievance Coordinator refused to file and process [it]." (ECF No. 3, Complaint, at Section IV). He adds that he later submitted an Inmate Request to Staff Member, dated November 20, 2014 and addressed to "Ms. Siegel," indicating that he had not received any acknowledgement of his grievance and that fifteen days had passed without his receipt of an Initial Review Response by the Grievance Officer; however, this inmate request also allegedly went unprocessed and unanswered. (ECF No. 34-2, at p. 39; ECF No. 42, Plaintiff's Supplement, at p. 4). Thus, according to Plaintiff, the grievance process became unavailable when he didn't receive a response within the time required by DC-ADM 804, and he was, thus, entitled to file suit without exhausting his administrative remedies. (ECF No. 42, Plaintiff's Supplement, at p. 4-5).

---

2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

In response, Defendant disputes that Plaintiff filed any grievance regarding the subject of this lawsuit and, thus, failed to exhaust his administrative remedies before filing his complaint. Specifically, Defendant contends that the alleged grievance identified by Plaintiff was never received by the inmate grievance coordinator, Sarah Siegel ("Siegel"). At the hearing of December 1, 2016, Siegel testified that the grievance at issue was never received because, if it had been, she would have signed and dated the grievance form and a grievance number would have been assigned in its upper right-hand corner. (ECF No. 40, Hearing Transcript, at pp. 16-17). Siegel testified further that the alleged Inmate Request of November 20, 2014, also was never received by her because there was no stamp receipt in the upper-right corner. (Id. at p. 20). Siegel also testified that the presence of an inmate ID verified stamp on Plaintiff's copies of both the disputed grievance and the disputed inmate request was "very unusual." (Id. at pp. 18, 21).

Notwithstanding the dubious nature of the paper trail identified by Plaintiff, the most glaring problem with Plaintiff's argument that the grievance process was rendered "unavailable" by the alleged lack of response to his grievance arises from the timing of his complaint in this matter. Assuming, *arguendo*, that Plaintiff indeed submitted a grievance on November 3, 2014, and assuming further that the grievance was received for processing on the same date, an initial response from the grievance officer would have been due on or before November 25, 2014.[8] Yet, Plaintiff did not wait for the purported response deadline to pass before preparing the complaint

---

[8] According to DC-ADM 804, an initial response to a grievance is due within fifteen **business** days after the grievance is processed. If Plaintiff's disputed grievance was indeed processed on November 3, the Court takes judicial notice of the fact that November 11 is Veteran's Day and wouldn't have counted as a business day for purposes of calculating the response deadline.

in this matter, which just so happens to be dated November 25, 2014.

The Third Circuit has recognized a "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the [PLRA] requires." Davis v. Warman, 49 Fed. Appx. 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 Fed. Appx. 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 Fed. Appx. at 368.

Recently, in Robinson v. Superintendent Rockview SCI, 831 F.3d 148 (3d Cir. 2016), the Third Circuit concluded that the institution in that case "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." Id. at 154. Significantly, in Robinson, unlike in the present case, the plaintiff's grievance was properly signed and acknowledged by the grievance coordinator and was assigned a grievance number. Thus, there was no dispute that a grievance was, in fact, properly filed. Then, **two months** after the initial response was due, the plaintiff in Robinson sent the first of three separate requests for an update on the status of his grievance, all of which were ignored by the institution. Only after the third such request went unanswered did the plaintiff proceed with filing a lawsuit, nearly three months after the initial response to his grievance was due. Based on this egregious set of facts, the Third Circuit Court determined that Plaintiff's administrative remedies were rendered unavailable. Such is not the case here.

11

Aside from his disputed inmate request of November 20, 2014,[9] Plaintiff apparently made no other effort to ascertain the status of his disputed grievance before filing the within lawsuit (ECF No. 40, Hearing Transcript, at p. 34). Siegel testified that, if Plaintiff indeed submitted a grievance that was never acknowledged by the grievance officer, he could have written to her directly or gone to his unit manager or unit staff member and inquired about the status of the grievance. (ECF No. 40, Hearing Transcript, at p. 34). Plaintiff has not alleged or provided any evidence that he did so. Siegel testified further that, had he done so, she would have told him she had no record of having received the grievance and he would have been allowed to resubmit it within a few days, without it being considered past due. (Id. at p. 35). Thus, there is no evidence that Plaintiff's administrative remedies were ever rendered unavailable prior to his filing of the instant lawsuit. Consequently, the Court finds that Plaintiff never exhausted his administrative remedies before filing suit in this case, and summary judgment will be granted in favor of Defendant, accordingly.

An appropriate Order follows.

---

[9] The Court notes that, even if this request is deemed to have been properly submitted, it was dated five days **before** the initial response was due.